# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00028-CR

**Nathaniel Drew Carter, III, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE CRIMINAL DISTRICT COURT OF DALLAS COUNTY
### NO. F-0273284-IH, HONORABLE JANICE L. WARDER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Nathaniel Drew Carter, III, appeals his conviction for burglary of a building. *See* Tex. Pen. Code Ann. § 38.02 (West 2003). The jury found appellant guilty, found the allegations as to two prior felony convictions to be "true," and assessed punishment at twenty years' imprisonment.

### Points of Error

Appellant advances three points of error. First, appellant contends that the trial court erred by misstating the applicable parole law to the jury panel during voir dire examination. Second, appellant claims that the trial court erred in overruling his objection to the admission of his custodial statement made without the benefit of *Miranda*[1] warnings. Third, appellant urges that the trial court

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

erred in overruling his objections to the admission of his custodial statement "and other testimony about the unattended children." We will affirm the conviction.

## Background

Appellant does not challenge the legal or factual sufficiency of the evidence to support his conviction. A brief recitation of the facts will place the points of error in proper perspective.

The burglary occurred at 306 Satinwood in Dallas County on August 28, 2002, between noon and one o'clock in the afternoon. Mary Velasquez testified that she was home at the time in question when her sister-in-law, Alicia Velasquez, "called" her to come to Alicia's house across the street because someone was trying to break into a house nearby. Mary went to Alicia's home and saw a man climb into a window of a house across the alley from Alicia's home. The man was dressed in a white T-shirt and gray shorts. Mary telephoned 911 and reported what she had seen. She did not see anyone leave the house until the police arrived five minutes later. Mary observed the police take custody of the man when he climbed out of the window. She did not get a good look at the man's face, but she thought that he was the same person who entered the house.

Alicia Velasquez corroborated Mary's version. She had seen a man trying to open a window of the house and called Mary. She later saw the man entering the house through the window and observed the police taking the man out of the house through the same window. Alicia believed that the man was the same individual who entered the house earlier but she did not get a good look at his face.

2

Dallas Police Officer Kurt Manasco testified that he and his partner, Officer Maloney, arrived about one o'clock in the afternoon at the 306 Satinwood address. He saw a back window with a broken pane. While waiting for a back-up team, Manasco saw appellant in the back window with socks on his hands. Manasco ordered appellant out of the house and he and his partner helped appellant out of the window. Appellant was handcuffed. In addition to the socks, appellant was found to be in possession of a screwdriver and plastic gloves in his pockets. Appellant told the officers no one else was in the house. He gave his home address as 413 South St. Augustine Street. Appellant was placed in the squad car as the officers awaited a search team to determine if anyone else was in the house.

Officer Donald Randle testified that he arrived at the scene, climbed through the window earlier described, and opened a door for the other officers. The search revealed no other individuals in the house. Randle saw, however, a drill, a chainsaw, and a television set stacked near the broken window.

Jerry Inzer testified that he lived in Austin and owned the house in question at 306 Satinwood in Dallas. He related that he was in the process of remodeling the house and using it to store materials for himself and his parents. He had not given appellant or anyone else permission to break and enter his house. Inzer had seen appellant at the residence next door, and had waved at him several times, but did not know his name. After the Dallas Police notified him on August 28, 2002, about the burglary, Inzer came to Dallas a day or two later. He found the glass broken in the back window, and discovered that a chainsaw, a drill and other things had been moved near the back window. Inzer described the house as being locked and secured at all times.

**Parole Law Instruction**

In his first point of error, appellant argues that the trial court erred by misstating the parole law to the jury panel during voir dire examination in response to a prospective juror's question. There was no objection to the trial court's answer. Nothing was preserved for review. *See* Tex. R. App. P. 33.1. Any error was waived. *See Rhoades v. State*, 984 S.W.2d 113, 119 (Tex. Crim. App. 1996); *Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990).

If any argument for preservation of error may be made, we observe that the indictment alleged the primary offense of burglary of a building, a state jail felony, enhanced by allegations of two prior felony convictions to a second degree felony. *See* Tex. Pen. Code Ann. § 12.42(a)(2) (West Supp. 2004). The punishment range for a second degree felony is not more than twenty years nor less than two years' imprisonment. In addition, a fine may be imposed not to exceed $10,000. *See* Tex. Pen. Code Ann. § 12.33 (West 2003). The punishment for the primary offense, a state jail felony, is not more than two years nor less than 180 days in a state jail. In addition, a fine may be imposed not to exceed $10,000. *See* Tex. Pen. Code Ann. § 12.35 (West 2003).

During the voir dire examination, a discussion arose concerning the possible range of punishment. It appears every effort was made to state the proper range of punishment without reference to the prior convictions alleged for enhancement of punishment. One prospective juror asked the trial court: "If you did give a person 20 years what is he susceptible of serving?" The State points out that the trial court's response was legally correct and limited to the question asked. We do not understand appellant to disagree. Appellant's contention raised on appeal is only that the trial court should have gone further and instructed the jury that parole was not applicable to a

4

conviction for a state jail felony. Appellant cites *Best v. State*, 118 S.W.3d 857, 866 (Tex. App.—Fort Worth 2003, no pet.). *Best* does hold that a person convicted of a state jail felony is not entitled to parole or good time credit. *Id.* at 866 (citing Tex. Gov't Code Ann. § 508.141(a) (West 1998) and Tex. Code Crim. Proc. Ann. art. 42.12, § 15(h)(i) (West Supp. 2004)). Appellant acknowledges that he has been unable to find any case law that would require a trial court to instruct the jury that parole is inapplicable to state jail felony sentences. *Best*, however, points out that article 37.07 of the Texas Code of Criminal Procedure[2] is silent on the matter, and because the legislature has not specified that juries be informed that parole or good time credits do not apply to state jail felonies, such instruction is not required. *Id.* Appellant's first point of error was not preserved for review. Under any circumstances, however, it is without merit.

### Oral Custodial Statements

In his second point, appellant claims that the trial court erred in overruling his objections to the introduction of his oral custodial statements made without benefit of the *Miranda* warnings. Prior to his testimony, Officer Kurt Manasco was taken on voir dire examination in the jurors' absence first by the prosecutor and then by the defense counsel as to the oral statements made to him by appellant. Manasco testified that after appellant was taken into custody, he was

---

[2] *See* Tex. Code Crim. Proc. Ann. art. 37.07 (West Supp. 2004).

5

handcuffed and placed in the squad car. The officer related that he and his partner were going to take appellant to the Southeast Investigative Division to be interviewed by detectives. Manasco stated that patrol officers do not generally ask questions of a defendant except on safety issues. He had not given the *Miranda* warnings to appellant at the time. Manasco revealed that they waited at the scene for the arrival of a search team. During this interval, Manasco began to fill out a booking slip. At this point, appellant asked with what offense he was being charged. Manasco replied, "Burglary." Appellant then volunteered that he knew the owner of the house, was "friends with him." Appellant kept repeating that he did not burglarize the house. After an interval, appellant stated that he heard someone breaking into the house and he went to investigate. Manasco testified that none of the statements appellant made were the result of custodial interrogation or questioning by the police.

On the voir dire examination, appellant objected to all statements made by him when he had not been "Mirandized" or given "his 38.22 warnings." The trial court overruled the objections. "Volunteered statements *of any kind* are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." *Miranda v. Arizona*, 384 U.S. 438, 478 (1966) (emphasis added); *see also Rhode Island v. Innis*, 446 U.S. 591, 300 (1980); *Jones v. State*, 795 S.W.2d 171, 176 (Tex. Crim. App. 1990); *Walker v. State*, 470 S.W.2d 669, 671 (Tex. Crim. App. 1971); *Jefferson v. State*, 974 S.W.2d 887, 890-91 (Tex. App.—Austin 1998, no pet.).

Article 38.22, section 5 of the Code of Criminal Procedure provides:

> *Nothing in this article precludes the admission* of a statement made by the accused in open court at his trial, before a grand jury, or at an examining trial in compliance with Articles 16.03 and 16.04 of this code, or *of a statement that is the res gestae of the arrest or of the offense, or of a statement that does not stem from custodial interrogation, or of a voluntary statement*, whether or not the result of

6

custodial interrogation, that has a bearing upon the credibility of the accused as a witness, or of any other statement that may be admissible under law.

Tex. Code Crim. Proc. Ann. art. 38.22, § 5 (West Supp. 2004) (emphasis added).

Appellant was in custody at the time of the statements, but the evidence is uncontested that he was not subject to express questioning or the functional equivalent of interrogation. Appellant initiated the conversation with the officer regarding the charge on which he was being held and subsequently volunteered the statements implying that he had the owner's permission to be on the premises and that he was only investigating a possible "break-in." The trial court did not err in overruling the objections and did not abuse its discretion in admitting the evidence.

### Another Oral Statement

In his third point of error, appellant complains of the admission, over objection, of another unwarned custodial statement "and other testimony about the unattended children."

In the same voir dire examination referred to in our previous discussion, Officer Manasco testified that as they started to leave the scene to take appellant to the detectives for an interview, appellant made another oral statement. Appellant asked the officers to "wait a minute." Appellant then added: "I've got—there are three kids I've been keeping in the house next door." Manasco testified that other officers searched the house next door to the burglarized house and found three children there and had them taken to CPS [Child Protective Services].

Appellant's statement was admissible for the reasons stated in our disposition of point of error two. It was not an unwarned custodial statement barred by *Miranda* and article 38.22.

7

Appellant volunteered the statement. It was not elicited by questioning. Appellant's initial argument is without merit.

Appellant also objected to the admission of appellant's statement about babysitting three children as being in violation of Rules 402, 403 and 404(b) of the Texas Rules of Evidence. Appellant claimed that the evidence was not relevant and was inadmissible. Tex. R. Evid. 402. The trial court overruled the objection noting that the evidence was relevant because the babysitting gave appellant an opportunity on the day in question to observe the house next door and know it was unoccupied. The evidence showed that appellant could have been aware of the opportunity for burglary.

The trial court also overruled appellant's Rule 403 objection. Tex. R. Evid. 403. Under this rule, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Rule 403 requires the exclusion of evidence only where there exists a clear disparity between the degree of prejudice of the offered evidence and its probative value. *Conner v. State*, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001). The rule favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Id.*; *Jones v. State*, 944 S.W.2d 642, 652-53 (Tex. Crim. App. 1996). The fact that appellant left the children unattended while engaged in burglary next door was prejudicial, but to his credit, the statement also displayed his concern for the welfare of the children. The statement contained relevant evidence of probative value, which was not substantially outweighed by the danger of unfair prejudice. At the guilt/innocence stage of the trial, the ages of the children and

8

surrounding circumstances were not presented.[3] The evidence offered was brief and not emphasized by the State.

Appellant also objected to the admission of appellant's statement on the basis of Rule 404(b). Tex. R. Evid. 404(b). Appellant argued that under the rule, evidence of other crimes, wrongs, or acts is not admissible to prove the character of the person in order to show action in conformity therewith. The trial court did not believe the statement revealed an extraneous offense or bad act. The objection was overruled. The State points out that evidence of other crimes, wrongs, or acts are expressly admissible under Rule 404(b) as proof of "opportunity" and that the trial court's ruling was correct. We agree.

We conclude that the trial court did not abuse its discretion in admitting appellant's statement about the three children. The trial court's ruling was within the zone of reasonable disagreement. *See Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990).

In this point of error, appellant also expressly complains of the admission of "other testimony about the unattended children." Appellant makes brief reference to Officer Manasco's testimony that other officers found three children in the house and had them taken to "CPS." Appellant does not point out where he objected to this "other" testimony. Our examination of the record fails to uncover any objection. Appellant failed to preserve error as to this particular matter. Tex. R. App. P. 33.1. The third point of error is overruled.

---

[3] At the penalty stage of the trial, appellant testified for the first time. He related that the children were his two, three, and five-year-old nieces. He also told the jury that he was guilty of criminal trespass, not burglary.

The judgment is affirmed.

_____

John F. Onion, Jr., Justice

Before Chief Justice Law, Justices Patterson and Onion*

Affirmed

Filed:   April 15, 2004

Do Not Publish

---

*    Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
     assignment.  *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).