

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00503-CR
### NO. 02-12-00504-CR
### NO. 02-12-00505-CR

JAMES MACK GUTHRIE                                              APPELLANT

V.

THE STATE OF TEXAS                                                   STATE

----------

## FROM THE 415TH DISTRICT COURT OF PARKER COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant James Mack Guthrie pleaded guilty to aggravated assault with a deadly weapon,[2] possession or transport of certain chemicals with intent to

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Penal Code Ann. § 22.02(a)(2) (West 2011).

manufacture a controlled substance,[3] and possession of less than one gram of methamphetamine.[4] The trial court convicted Guthrie of each offense and after a bench trial on punishment, sentenced him to fifteen years' confinement and a $2,500 fine for the aggravated-assault conviction, twelve years' confinement and a $2,500 fine for the possession-or-transport conviction, and two years' confinement and a $2,500 fine for the possession conviction. In two points, Guthrie argues that the trial court erred by failing to suppress illegally obtained evidence.[5] We will affirm.

John Hadley borrowed $145 from Guthrie. As security for the loan, Hadley gave Guthrie a flat-screen television. Hadley ultimately repaid Guthrie, but Guthrie did not return Hadley's television.

---

[3]*See* Tex. Health & Safety Code Ann. § 481.124(a) (West 2010).

[4]*See id.* § 481.115(a), (b) (West 2010).

[5]Guthrie raises four points, complaining of two state and two federal violations, but he did not separately brief the state and federal arguments, including the differences in protections, if any, between the state and federal constitutions. We therefore limit our review to Guthrie's arguments under the framework of the Fourth Amendment, his first and third points, and we overrule his second and fourth points as inadequately briefed. *See Muniz v. State*, 851 S.W.2d 238, 251–52 (Tex. Crim. App.) (stating that state and federal constitutional claims should be argued in separate grounds, with separate substantive analysis or argument provided for each ground), *cert. denied*, 510 U.S. 837 (1993); *Martinez v. State*, 236 S.W.3d 361, 366 n.3 (Tex. App.—Fort Worth 2007, pet. dism'd) (providing that appellate court need not address federal and state constitutional issues separately when appellant does not separate the federal and state issues into distinct points with argument on each); *see also Garcia v. State*, 919 S.W.2d 370, 388 (Tex. Crim. App. 1994).

One day in July 2011, Hadley went to Guthrie's shop to inquire about the television. Guthrie was away, so Hadley left a message. Hadley returned to the shop later the same day, but Guthrie still was not there. A few hours later, Hadley went to the shop for a third time, but the aluminum gate located at the entrance to the property was closed and locked. Hadley drove away but turned around, returned to the property, and rammed the gate a few times.[6] Hadley returned home.

A few hours later, Hadley was in his kitchen when Guthrie and Jesse Shobert kicked in the door. Hadley recognized Shobert as someone that he had seen at Guthrie's shop during one of his earlier visits. Shobert was wearing a bulletproof vest and carrying a sawed-off shotgun, which he pointed at Hadley, and Guthrie had a handgun holstered on his side. The three yelled back and forth at each other. Shobert and Guthrie went outside when Hadley's wife entered the kitchen, and she closed and locked the door. Hadley climbed out of a window and called 911 from a neighboring house.

Not long thereafter, sheriff's deputies dispatched to Guthrie's property detained Shobert after they observed him drive up in a black pickup truck, open the gate, and drive onto the property. The truck was registered to Guthrie. Shobert consented to a search of the truck, and investigators found a bulletproof vest carrier inside. Shobert also consented to a search of the shop located on

---

[6]The gate did not open.

3

Guthrie's property. During that search, investigators discovered a cardboard box labeled "muriatic acid," plastic or rubber tubing, packs of Sudafed pills, and a can of ether inside of a dryer. At some point during the search of the shop, Guthrie's mother told the deputies that Guthrie was on the telephone and wanted to speak with them. Guthrie informed the deputies that they did not have permission to be on his property, so they stopped the search and made arrangements to obtain a search warrant. During a subsequent search pursuant to the warrant, authorities found items used for the manufacture of methamphetamine; drug paraphernalia in Guthrie's travel trailer, which was also located on his property; and less than one gram of methamphetamine.

In his first and third points, Guthrie argues that the trial court erred by admitting the evidence that investigators found during their warrantless searches of his pickup truck and shop (the bulletproof vest carrier, muriatic acid, tubing, and Sudafed) because Shobert lacked the authority as a third party to consent to both searches.[7]

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. Const. amend. IV. A search conducted without a warrant is per se unreasonable unless it falls within one of the

---

[7]The State initially responds that Guthrie did not preserve these points for appellate review, but we find that his numerous, repeated objections during trial sufficiently preserved error. See Tex. R. App. P. 33.1(a)(1); see also Holmes v. State, 248 S.W.3d 194, 199 (Tex. Crim. App. 2008) (reasoning that a defendant may challenge the admissibility of evidence by objecting to the admission of the evidence when it is offered at trial).

4

"specifically defined and well established" exceptions to the warrant requirement. *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App.), *cert. denied*, 540 U.S. 1004 (2003); *see Best v. State*, 118 S.W.3d 857, 862 (Tex. App.—Fort Worth 2003, no pet.). One such exception is consent. *Gutierrez v. State*, 221 S.W.3d 680, 686 (Tex. Crim. App. 2007). Whether it is reasonable under the Fourth Amendment for an officer to rely on consent is a question to be determined by examining the totality of the circumstances. *Hubert v. State*, 312 S.W.3d 554, 559–60 (Tex. Crim. App. 2010).

The court of criminal appeals has explained when a third party has actual authority to consent to the search of another's property:

> A third party can consent to a search to the detriment of another's privacy interest if the third party has actual authority over the place or thing to be searched. The third party may, in his own right, give valid consent when he and the absent, non-consenting person share common authority over the premises or property. Although property interests are relevant to this determination, the commonality of authority to consent is not determined solely by the law of property. Instead, common authority is shown by
>
>> mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*Id.* at 560–61.

When the facts do not support a finding of actual authority, a search may nevertheless be reasonable if the person who gave consent apparently had

authority to do so. *See Illinois v. Rodriguez*, 497 U.S. 177, 186–88, 110 S. Ct. 2793, 2800–01 (1990). "[W]hen an officer reasonably, though erroneously, believes that a third party purporting to provide consent has actual authority over the place or thing to be searched, apparent authority exists and the purported consent from the third party can serve to make the search reasonable." *Hubert*, 312 S.W.3d at 561.

Whether a third party had actual authority to consent to the search of another's property and whether an officer was reasonable in finding that a third party had apparent authority to consent are mixed questions of law and fact that the reviewing court should examine de novo. *Id.* at 559–60.

Regarding the warrantless search of Guthrie's truck, the evidence demonstrates that Shobert was alone and driving the truck just before deputies detained him. No one else was driving the truck, and no one else had the keys or was present. Shobert told the deputies that he had permission to drive the truck and that he had been living on Guthrie's property. Guthrie argues that Shobert did not own the truck, but that fact, although relevant, is not dispositive of the inquiry. *See Welch v. State*, 93 S.W.3d 50, 53–54 (Tex. Crim. App. 2002) (stating that "property rights are not dispositive in determining whether a third-party has joint access and control"). The evidence shows that Shobert had joint access or control of Guthrie's truck when he was detained and, therefore, actual authority to consent to the search of the truck. *See Hubert*, 312 S.W.3d at 560–61. We hold that the trial court did not err by admitting the evidence that was

6

discovered during the warrantless search of Guthrie's truck. *See Maxwell v. State*, 73 S.W.3d 278, 281–82 (Tex. Crim. App.) (holding that rig driver had actual authority to consent to search of rig), *cert. denied*, 537 U.S. 1051 (2002).

Regarding the warrantless search of Guthrie's shop, Shobert told authorities that he had routine access and "regular and unrestricted access" to the shop building, that he had been living in the travel trailer located on the property for several days, that he was the one who put the items in the dryer, and that the shop and travel trailer were "all one property." A narcotics investigator's testimony echoed that evidence. Another investigator testified that two girls had told him that Shobert was installing some speakers in their car at the shop. We hold that, under all of these circumstances, it was reasonable for the investigators to conclude that Shobert had authority to consent to a search of the shop. *See, e.g.*, *Davis v. State*, 93 S.W.3d 664, 668 (Tex. App.—Texarkana 2002, pet. ref'd) (holding that search of house was reasonable because weekend resident told police that she lived there). The trial court therefore did not err by admitting the evidence that was discovered during the warrantless search of the shop.

We overrule Guthrie's first and third points and affirm the trial court's judgment.


BILL MEIER
JUSTICE

7

PANEL:  MCCOY, MEIER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  August 15, 2013